```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
ATLANTIC GROUP LTD.,                    |
                                        |
            Plaintiff,                  |
                                        |   00 Civ. 7845 (KMW)
    -against-                           |
                                        |   OPINION AND ORDER
THE INTERPUBLIC GROUP OF COMPANIES,     |
INC. and INITIATIVE MEDIA WORLDWIDE,    |
                                        |
            Defendants.                 |
---------------------------------------X
```
KIMBA M. WOOD, U.S.D.J.:

Plaintiff Atlantic Group Ltd. ("Atlantic") brought suit against Defendants The Interpublic Group of Companies, Inc. ("Interpublic") and Initiative Media Worldwide ("Initiative"), alleging that they unlawfully induced employees of Plaintiff's advertising agency in Kiev, Ukraine to breach their employment contracts. Defendants have moved for summary judgment on the five remaining causes of action: (1) tortious interference with contract, (2) civil conspiracy to tortiously interfere with contract, (3) aiding and abetting tortious interference with contract, (4) tortious interference with business relations, and (5) civil conspiracy to tortiously interfere with business relations. For the reasons stated below, the motion is granted.

**BACKGROUND**

I.  **Factual Background**

Plaintiff Atlantic, formerly known as Perekhid Media Group,

1

is a corporation registered in the Bahamas.  (Defs.' Rule 56.1 Statement ¶¶ 1, 4.)  Atlantic's founder, Andrew Bain, formed the company to pursue advertising and media opportunities in the former Soviet Union on behalf of American advertising firms. (Pl.'s Rule 56.1 Statement ¶ 182.)

Defendant Interpublic is a Delaware corporation.  (Defs.' Rule 56.1 Statement ¶ 10.)  Interpublic owns a variety of advertising and communications firms, including Defendant Initiative, a California corporation.  (Id. ¶¶ 9, 11.)

Atlantic created several subsidiary companies with principal operations in Ukraine, including Telemedia, Ltd.  (Bain Dep. 20-21, 24-25.)  Telemedia's general manager, Sergei Mateev, signed an employment contract with Atlantic in 1997.  (Defs.' Rule 56.1 Statement ¶¶ 35, 39.)  Mateev's contract contained a clause prohibiting him from working for competitors of Atlantic within one year of leaving the firm.  (Second Dovgert Aff., Ex. 9.)  Six other employees -- Irina Chernenko, Andrey Kolesnik, Ludmila Yurevna Lukyanova, Oksana Semenova, Aleksey Skukin, and Grigorova Yu[1] -- signed employment contracts with Telemedia in 1998. (Certificate of Accuracy by Translator Dagmara Krasa-Berstell, Exs. A-F.)  These six employees also signed "agreements on confidentiality, non-interference and proprietary information,"

---

[1] In other documents, this name is translated as Victoria Grygorova.

2

which stipulated that the employees would not work for competing agencies within six months of leaving Telemedia.  (Second Dovgert Aff., Ex. 10.)

In November 1999, Chernenko, Kolesnik, Lukyanova, Mateev, Semenova, Skukin, and Yu left work at Telemedia and joined a competing firm, Initiative Media/Kiev.  (Pl.'s Rule 56.1 Statement ¶¶ 300, 307.)  Plaintiff has alleged that Defendants either directly or indirectly induced these seven employees to breach their employment contracts with Telemedia and/or Plaintiff.  (Am. Compl. ¶¶ 104, 108-10, 113-14, 118-20, 123-25.)

## II.  Procedural Background

Defendants' motion for summary judgment was initially filed in January 2003.  By order dated March 15, 2004, the Court concluded that Ukrainian substantive law governed Plaintiff's claims, and referred the matter for settlement negotiations.  After the parties failed to settle, the Court ordered additional briefing on Ukrainian law in December 2004.

On September 15, 2005, the Court ruled on the summary judgment motion.  It granted summary judgment on all eight counts of the Amended Complaint: the three counts sounding in contract and quasi-contract (promissory estoppel, quantum meruit, and breach of contract), and the five counts sounding in tort, the latter based on Defendants' expert's statement that Ukraine is

the exclusive venue for tort actions under the Civil Code of Ukraine.  However, because Defendants raised the issue of venue only in their supplemental submissions, the Court permitted Plaintiff to apply for restoration of the action to the calendar "upon a showing that adjudication of tort claims in a venue outside Ukraine is permissible pursuant to Ukrainian law."  Atl. Group Ltd. v. Interpublic Group of Cos., No. 00 Civ. 7845 (KMW), 2005 WL 2277097, at *4 (S.D.N.Y. Sept. 15, 2005).  Plaintiff so applied, and Defendants conceded that Plaintiff's tort claims should not have been dismissed for improper venue.  The Court therefore reinstated the five tort claims, and Defendants' motion for summary judgment, by order dated November 17, 2005.

**STANDARDS OF LAW**

Defendants' motion for summary judgment should be granted only if there is no genuine issue as to any material fact and Defendants are entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The Court must view all facts and construe all ambiguities in the light most favorable to Plaintiff, drawing all permissible inferences in Plaintiff's favor.  D'Cunha v. Genovese/Eckerd Corp., 479 F.3d 193, 194 (2d Cir. 2007).

In determining the law of Ukraine, the Court may consider any relevant material or source, whether or not submitted by the parties, and whether or not admissible under the Federal Rules of

Evidence. Fed. R. Civ. P. 44.1. The Court's determination shall be treated as a ruling on a question of law. Id.

**DISCUSSION**

Plaintiff premises the remaining counts of the Amended Complaint -- (1) tortious interference with contract, (2) civil conspiracy to tortiously interfere with contract, (3) aiding and abetting tortious interference with contract, (4) tortious interference with business relations, and (5) civil conspiracy to tortiously interfere with business relations -- on Article 440 of the Civil Code of Ukraine, a tort statute. Under Article 440, tortfeasors who cause damage to the property of another person or organization are liable for the amount of the damage. (First Zakhvataev Aff., Ex. 3.) A claim under Article 440 has three elements: (1) unlawful conduct by the defendant (2) that was the cause of (3) damage to the plaintiff. (Id. ¶ 20.) Defendants are entitled to summary judgment because Plaintiff cannot satisfy the first element, for two reasons: Defendants' alleged tortious interference with contract is not "unlawful conduct" in Ukraine, and the noncompetition provisions of the contracts were invalid.

**I.   Tortious Interference with Contract Is Not "Unlawful Conduct" for Purposes of Plaintiff's Claims**

Ukrainian law does not permit a cause of action for tortious interference with an employer-employee contract as American law

does; Plaintiff therefore cannot show that Defendants engaged in "unlawful conduct" (the first element of a tort under Ukraine's Article 440). In support of its claim that Defendants engaged in unlawful conduct, Plaintiff relies on Article 10 of the Unfair Competition Law of Ukraine, which prohibits the instigation of boycotts against business competitors.[2] Defendants' experts, however, have shown that Ukraine's code-based legal system restricts the application of specific codes to their specific subject areas: a provision of the Unfair Competition Law, which deals with antitrust, can neither be applied to a labor dispute nor used to state a cause of action for tort under the Civil Code. (See Second Dovgert Aff. ¶¶ 21, 23; Third Dovgert Aff. ¶¶ 14-16, 20; Second Butler Aff. ¶ 6.)

---

[2] Plaintiff translates Article 10 as follows: "The instigation to boycott a subject of business activities (entrepreneur) shall mean the encouragement by a competitor of another person, either directly or through agents, to refuse from [sic] the established contractual relations with such subject of business activities (entrepreneur)." (First Zakhvataev Aff., Ex. 2 (emphasis added).) Defendants dispute this translation, claiming that the law instead forbids encouraging someone "to refuse to establish contractual relations." (Second Dovgert Aff., Ex. 14 (emphasis added).) In other words, Plaintiff's translation applies to existing contracts, Defendants' translation only to future contracts.
    Defendants' version is superior to Plaintiff's for three reasons. First, it is correct English, whereas Plaintiff's version contains the non-idiomatic phrase "refuse from." Second, Defendants' version comports with the primary definition of "boycott" in English, which is "[t]o abstain from using, buying, or dealing with to express protest or to coerce." Webster's II New Riverside University Dictionary 195 (1994). Third, Defendants cite a business law treatise that confirms their translation. (Third Dovgert Aff., Ex. 22.) Although the Court grants summary judgment even using Plaintiff's translation, the superiority of Defendants' translation (which excludes the conduct at issue here) lends further support to summary judgment.

Plaintiff's experts do not dispute Defendants' general argument, that Ukrainian law strictly segregates legal subjects into distinct codes that are not applicable beyond the bounds of their subject areas.[3]  Instead, they argue specifically that the Unfair Competition Law, by its terms, applies to causes of action under the Civil Code.  They cite two provisions of the Unfair Competition Law in support of this position, but neither is relevant.  First, Plaintiff notes that Article 2 of the Unfair Competition Law states that the law applies not just to "business entities" but to "citizens."  (Second Zakhvataev Aff., Ex. 1; see id. ¶ 17.)  This argument is irrelevant, because Article 2 specifically limits the application of the Unfair Competition Law to cases of "unfair competition."  (Id., Ex. 1.)  Plaintiff has alleged that Defendants committed a tort, not an antitrust violation.  Second, Article 24 of the Unfair Competition Law states that losses resulting from violations of the Unfair Competition Law shall be reimbursed under procedures specified by the Civil Code.  (Second Zakhvataev Aff., Ex. 2.)  This is a

---

[3] Some of Plaintiff's experts' statements even appear to confirm this position.  (See First Zhernakov Aff. ¶ 29 ("Since labor relations in Ukraine are often regulated by labor legislation and not by civil law, [the Unfair Competition Law] do[es] not generally apply to employees who work under labor law contract . . . ."); id. ¶ 30 (noting that there is no legislation governing competition in the labor law sphere); Second Zakhvataev Aff. ¶ 4 ("Where it is established that particular contractual relations are governed by labor law, that law should apply; and in reverse, where it is established that certain relations in that labor contract are governed by some other law -- that other law should apply.").)

procedural provision, not a substantive one, and in light of the general rule about the separation of code subject areas, it does not follow that violations of an antitrust provision may be used to state a cause of action under a Civil Code provision.

Defendants' experts have also shown that even if, <u>arguendo</u>, the Unfair Competition Law were held applicable to the facts of this case, the exclusive remedy for violations of the Unfair Competition Law is to lodge a complaint with the Antimonopoly Committee, which Plaintiff did not do. (First Dovgert Aff. ¶ 27; Second Butler Aff. ¶¶ 5-6.) Plaintiff's experts do not contest this.

Because any alleged violation of the Unfair Competition Law cannot be used to state a cause of action under the Civil Code, Plaintiff has failed to satisfy the first element of a tort under Ukrainian law, unlawful conduct by Defendants. Summary judgment is therefore appropriate.

## II. **The Noncompetition Provisions of the Contracts Are Invalid**

In the alternative, even if a violation of the Unfair Competition Law could be used to state a claim under Article 440 of the Civil Code, Defendants would be entitled to summary judgment to the extent that Plaintiff's claims rely on the noncompetition clauses in the employee contracts, because Ukrainian courts would refuse to enforce those clauses.

**A.    Noncompetition Clauses Are Unenforceable Under Ukrainian Law**

The noncompetition clauses of Telemedia's contracts with its Ukrainian employees are unenforceable because Article 9 of the Labor Code of Ukraine states, "The conditions of a contract on labor worsening the position of a worker in comparison with legislation of Ukraine on labor shall be invalid."  (First Butler Aff. ¶ 25 n.2.)[4]

The parties agree that in 1999, when Telemedia's employees quit their jobs, Ukrainian law neither expressly authorized nor expressly disallowed noncompetition provisions in labor contracts.  (See First Dovgert Aff. ¶ 9; First Zhernakov Aff. ¶ 23.)  However, then-current Ukrainian labor legislation gave workers the right to work for multiple companies simultaneously, even competing companies, which Defendants' expert states is a legacy of socialism's disdain for the concept of economic competition.  (First Butler Aff. ¶¶ 32-33 (citing Article 102 of the Labor Code).)  In comparison with the right to hold multiple jobs, a noncompetition clause is a condition that worsens the

---

[4] The parties have submitted slightly different translations of Article 9, but the differences are not relevant to this analysis. (See First Dovgert Aff., Ex. 3 ("Clauses of the employment agreement which worsen the status of the employees under the Ukrainian labor legislation are invalid."); First Zhernakov Aff., Ex. 6 ("Provisions of employment agreements, which worsen employees' conditions as compared to those provided labor [sic] legislation of Ukraine, shall be invalid.").)

employee's position, and is thus invalid under Article 9.[5]

A 1998 decision of the Constitutional Court of Ukraine, which Plaintiff argues has the effect of lessening the severity of Article 9, is not applicable to the contracts between Telemedia and its employees. (<u>See</u> First Zhernakov Aff., Ex. 9.) The decision held that certain types of contract conditions that appear to worsen employees' status are not rendered invalid by Article 9. However, Ukrainian law distinguishes between employment agreements of indefinite duration and those effective for the duration of a specific project, with special rules applicable only to the latter. <u>See</u> Scott E. Brown, <u>Doing Business in Ukraine: The Essential Legal Guide 2004/2005</u> 230 (2004). The Constitutional Court decision cited by Plaintiff concerns Article 21 of the Labor Code, which governs only contracts "under which the employee undertakes a commitment to perform the job as specified therein" -- in other words, contracts effective only for the duration of a specific project. (First Zhernakov Aff., Ex. 8.) By contrast, Telemedia's contracts with its employees were not measured by the duration of

---

[5] Although a noncompetition provision might be conceptually related to a provision barring an employee from disclosing commercial secrets (as Plaintiff argues), the two are not identical. Ukrainian law specifically prohibits disclosure of commercial secrets. (<u>See</u> First Zhernakov Aff., Ex. 10.) By contrast, not only does Ukrainian law not expressly authorize noncompetition agreements, it permits employees to work for multiple companies simultaneously. Any inconsistency between these rules reflects the judgment of Ukraine's government.

specific projects.  (See Second Dovgert Aff., Ex. 9, ¶ 1; id., Ex. 10, ¶ 8.1.)  As a result, neither Article 21 nor the 1998 Constitutional Court decision applies.

The Civil Code of Ukraine is also inapplicable to the noncompetition clauses.  Plaintiff argues that the noncompetition clauses can be interpreted as independent civil contracts governed by the Civil Code.  But the contracts do not describe themselves as civil in nature, and they do not segregate the noncompetition clauses from labor-law provisions.  In addition, Article 48 of the Civil Code states that contracts that are contrary to law are invalid.  (Second Dovgert Aff. ¶ 13; id., Ex. 12.)  The noncompetition provisions are invalid under Article 9 of the Labor Code, and therefore they cannot be rendered valid by recourse to the Civil Code.

**B.   Sergei Mateev's Contract Is Subject to Ukrainian Law**

Six of the contracts at issue are between Telemedia (Plaintiff's Ukrainian subsidiary) and Ukrainian citizens.  These contracts are indisputably governed by the law of Ukraine.  The seventh contract is between Plaintiff, a Bahamanian corporation, and general manager Sergei Mateev, a Bulgarian citizen.  Although Plaintiff and Mateev are not Ukrainian citizens, their contract is also governed by Ukrainian law, and the contract's noncompetition clause is consequently invalid for the reasons

11

stated above.

Plaintiff asserts that Mateev's contract is not governed by Ukrainian law because Article 8 of the Labor Code states, "[T]he labor relations of foreign citizens who are working for enterprises, institutions and organizations of Ukraine shall be governed by the laws of the employing party and by the international agreements of Ukraine."  (Macdonald Aff., Ex. 3.)[6]  This article is silent about the law applicable to labor relations of foreign citizens working in Ukraine for <u>foreign</u> enterprises, such as Plaintiff.  However, the authors of one Ukrainian treatise state that "the work at representative offices of foreign legal entities shall be governed by the Ukrainian legislation taking into account the silence of the special legislation and international treaties of Ukraine thereon." (First Dovgert Aff., Ex. 4 (Commentary of Bronislav Stychynsky et al.).)  Plaintiff has given no reason to dispute this analysis; indeed, Plaintiff's expert appears to confirm it.  (<u>See</u> First Zhernakov Aff. ¶ 14 (asserting that non-Ukrainian companies operating in Ukraine are subject to "the laws of the state in

---

[6] The translation quoted was prepared by a neutral third-party translator.  Defendants have submitted two alternative translations of Article 8, which replace "laws of the employing party" with either "the law of the state the person is employed in" or "legislation of the State in which the arrangement of labor (or hire) of the worker is effectuated."   (First Dovgert Aff., Ex. 3; First Butler Aff. ¶ 38.) Although the Court accepts the neutral translation of the statute, the distinction among these variations in translation is irrelevant to the Court's analysis.

which the employment (hiring) has occurred").

Defendants' interpretation is also more logically sound. Regardless of whether the Mateev contract is governed in some particulars by the law of the Bahamas or of New York (as stipulated in the contract), it should also be governed by the law of Ukraine to the extent Ukrainian law intervenes to protect workers. Just as foreign citizens working for foreign corporations in the United States are protected by many aspects of American labor legislation, so too should a foreign citizen working for a foreign corporation in Ukraine enjoy the benefits of Ukraine's prohibition on worsening an employee's status. Any other interpretation would undercut Ukraine's ability to apply labor law evenhandedly.

**CONCLUSION**

For the reasons stated above, Defendants' motion for summary judgment (docket number 55) is GRANTED. The Clerk of Court is directed to close this case; any pending motions are moot.

SO ORDERED.
Dated:   New York, New York
         July 13, 2007

                                    _____
                                    Kimba M. Wood
                                    United States District Judge